(Decided 22d May, 1872.)

## JAMES MUSGRAVE *vs.* JOHN F. STAYLOR, Administrator of JOHN STAYLOR.

### *Practice.*

In a suit instituted against C and M, a decree was passed adjudging that M held a market stall in trust for S, deceased, and directing M to convey the same to the administrator of S. From this decree C, who claimed an interest in the stall, appealed, and on the appeal the decree was affirmed. Afterwards, within nine months from the date of the decree, M appealed. On this appeal it was HELD:

That the affirmance of the decree on the appeal of C, was a conclusive adjudication against any interest which he might have had in the stall, and his rights could not be set up to support the claim of M, which rested solely upon the title of C.

Where the purpose of an injunction was to prevent a transfer to a third party, or any disposition of a market stall which would defeat or embarrass the passage of the final decree, under which the complainant's rights could be effectively secured and enforced, an objection to the final decree, that it did not dissolve the injunction previously granted, is untenable. The injunction served its whole office and purpose by being obeyed until the final decree; and no order of dissolution was necessary to the validity and effectiveness of that decree, which disposed of the whole controversy by granting the relief prayed by the bill.

APPEAL from the Circuit Court of Baltimore City.
The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, BOWIE, GRASON, MILLER and ROBINSON, J.

*William A. Stewart*, for the appellant.

*W. H. Dawson* and *J. R. Quinn*, for the appellee.

MILLER, J., delivered the opinion of the Court.

It appears from this record that John Staylor, who died intestate in April, 1862, was in his lifetime possessed of a certain stall in the Belair market, the legal title to which was in James Musgrave, who held it in trust for the deceased. In 1863 Musgrave transferred the stall to William T. Courtney, a grandson of the intestate, and in 1866 Courtney re-transferred it to Musgrave to secure the payment of $200, then loaned him by Musgrave. In May, 1868, John F. Staylor administered upon the personal estate of his father, John Staylor, deceased, and shortly thereafter filed the bill in this case against Courtney and Musgrave.

The bill alleges that Musgrave, in disregard of the trust reposed in him, assigned the stall absolutely to Courtney, who has since been in possession of the same, though both he and Musgrave well knew the latter had no interest therein other than as trustee for the benefit of the intestate and those interested in his estate; that since then, in 1866, Courtney has re-assigned the stall to Musgrave as security for a loan of $200, and Musgrave now refuses, upon demand made, to deliver possession of the same to the complainant, unless he is first paid the sum due him by Courtney; that it is immaterial whether the title and possession of the stall are in Musgrave or Courtney, as each was cognizant of the trust therein, and was bound to hold it to the uses and purposes of that trust. The prayer of the bill is, that the right of the complainant,

as administrator of his father, to the title and possession of the stall, be decreed and established; that the defendants be restrained by injunction from selling or disposing of it; that a receiver be appointed to sell the same and bring the proceeds into Court to abide its order, and for general relief. The injunction was granted as prayed.

Musgrave in his answer admits the original trust for John Staylor, but avers that after his death he transferred the legal title to Courtney at the request of the complainant himself, who at that time being the eldest son and claiming to represent the family, stated to respondent that it was a family arrangement in which all had agreed, that as Courtney paid the funeral expenses of the deceased, and was to provide for his mother, who was a daughter of the deceased, it was but just that the stall, which was then but of little value comparatively, should be transferred to him. He admits the re-transfer to himself by Courtney, as security for the loan of $200, and avers that he now holds the legal title to be transferred to Courtney on payment of that sum, with interest due thereon; and he further charges that as the transfer to Courtney was made at the instance of the complainant, it would be a fraud upon him to permit the stall now to be taken from him without requiring his loan of $200 to be first paid him.

Courtney in his answer excepts to the jurisdiction of the Court, and then states that at the time of the death of John Staylor the stall was of but little value, and immediately after his death the complainant and his other children told respondent to take possession of the stall, and that he should thereafter own the same, provided he would pay the funeral expenses and debts of the deceased, and the back rent on the stall, upon the faith of which, respondent took possession of the stall and made all said payments, and took a transfer of the stall to himself from Musgrave, on the 6th of January, 1863, with full knowledge and consent of complainant and the other children of the deceased, and has been in possession

ever since, holding and owning the stall as a *bona fide* purchaser for value, and complainant and the estate of John Staylor have no interest whatever therein, and he denies the allegations of fraud and violation of trust set forth in the bill. He admits the re-transfer to Musgrave as security for the $200 loan, and denies that the latter holds the stall upon any trust except as security for this loan.

Testimony was then taken which clearly established the fact that the stall was paid for by John Staylor in his lifetime, and was held in trust for him by Musgrave, at the time of his death.  It also appears from the evidence, that besides this stall the deceased left very little personal estate, and owed debts to a small amount; that Courtney, who with his mother and sisters lived with his grandfather, and had attended to the business of the stall for some time prior to his death, paid the funeral expenses and debts of the deceased; that he received the sum of $126 due the deceased by Musgrave, but whether this, together with the value of the other small personal property of the deceased, which he also received and disposed of, was sufficient to pay the debts and funeral expenses is not clearly shown.  In respect also to the alleged arrangement or understanding upon which the transfer was made to Courtney, the proof is to some extent conflicting.  We think however it is quite certain there was no family arrangement of any kind entered into and binding upon *all* the children and distributees of the intestate.  Some two or three of them, including the complainant, doubtless did consent and agree that Courtney should have the use of the stall for the support of his mother and sisters, so long at least as his mother (who died before the bill was filed) should live; but *if it were necessary for us now to decide that question of fact, we should say the proof fails to establish clearly and satisfactorily that there was an agreement by any of the parties that the stall should be transferred to Courtney so as to vest the absolute ownership thereof in him.  The re-

transfer by Courtney to Musgrave to secure the $200 loan is fully proved.

After the testimony was returned the cause was submitted for final decree without argument. The Circuit Court thereupon passed a decree adjudging that Musgrave held the stall in trust for John Staylor, deceased, and directing him, by a good and sufficient assignment, to convey the same to the complainant as administrator of the said John Staylor, and transfer it to him upon the books of the city comptroller and register.

From this decree Courtney alone, in the first instance, appealed, and on his appeal the decree, on motion of the appellee, was affirmed by this Court under its eleventh rule, the appellant's counsel having failed to file his brief as required by that rule when the case was called for argument. Afterwards, but within nine months from its date Musgrave took the present appeal from the same decree.

The affirmance of the decree on Courtney's appeal is a conclusive adjudication against any interest or claim he may have had in the property, and his rights cannot now be set up on the present appeal to support the claim of Musgrave. But the only interest Musgrave has in the matter is re-payment of the sum he loaned to Courtney, and he cannot successfully assert a *lien* therefor upon the stall, except upon the ground that Courtney had a valid title to it, and could pledge it as security for that loan. In other words his *lien claim*, which affords the only basis of relief in equity, rests solely upon the title of Courtney, which has been definitely pronounced invalid. In this state of case it is impossible for him to obtain relief in this Court. He must pursue his remedies for the recovery of the debt due him by Courtney in the usual manner and in the proper *forum*. His right to assert this lien being gone, he cannot refuse to execute the transfer ordered by the decree, except upon condition that this loan is first repaid to him.

Nor can we discover any other ground upon which he can complain of the decree. That, clause of it which declares "that the transfer hereby decreed to be made is without prejudice to the demands of the defendants to be adjudicated in the proper Court," whatever it may mean, or whatever effect it may have, can in no event work injury to the appellant. This clause, like that directing the costs of the suit to be paid by the complainant out of the goods or money of the intestate in his hands, was inserted for the benefit of the defendants, and if it has any force must operate in that way. The objection that the decree does not dissolve the injunction previously granted forbidding the appellant to dispose of or transfer the stall, is equally untenable. The purpose of the injunction was to prevent a transfer to a third party, or any disposition of the property which would defeat or embarrass the passage of a final decree under which the complainant's rights could be effectively secured and enforced. It served its whole office and purpose by being obeyed until final decree, and no order of dissolution was necessary to the validity and effectiveness of that decree, which disposed of the whole controversy by granting the relief prayed by the bill. It scarcely need be said, in conclusion, that the fact that the complainant did not press for the appointment of a receiver to take charge of and sell the property, which is made a part of the prayer for relief in the bill, has worked no injury to the appellant.

*Decree affirmed and*
*cause remanded.*

(Decided 22d May, 1872.)